UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DIAMOND CASINO CRUISE, LLC,

Plaintiff,

v.                    4:12-cv-98

DEPARTMENT OF HOMELAND
SECURITY, HOMELAND SECURITY
INVESTIGATIONS and U.S. CUSTOMS
AND BORDER PROTECTION,

Defendants.

## ORDER

## I. INTRODUCTION

The Court once again takes up Defendants' Motion to Dismiss Amended Complaint. ECF No. 13. Survival of this case depends on whether 18 U.S.C. § 983(a)(3) implicitly provides a private right of action for claimants, like Diamond Casino Cruise ("Diamond"), to seek the return of seized property. Because it does not, the Court *GRANTS* Defendants' motion to dismiss.

## II. BACKGROUND[1]

Diamond filed this suit seeking the return of money seized from it as part of an investigation into its business activities. *See* ECF No. 1. Diamond's only claim is that the complaint in *United States v. $986,047.86,*

No. 4:12-cv-84 (S.D. Ga. Mar. 28, 2012)[2]—the civil forfeiture case involving the same money sought in this proceeding—violates the General Rules for Forfeiture Proceedings found at 18 U.S.C. § 983. *See* ECF No. 8 at 1, 4. Specifically, Diamond argues the civil forfeiture complaint fails to comply with the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rules") and thus § 983(a)(3)(A). *Id.* Diamond urges that therefore Defendants must return the money pending completion of forfeiture proceedings. *Id.*; *see also* 18 U.S.C. § 983(a)(3)(B).

Defendants responded by filing a motion to dismiss for failure to state a claim. ECF No. 13. The Court considered that motion and Diamond's response, but elected to request additional briefing on whether Diamond could bring a claim directly under § 983(a)(3). *See* ECF No. 20. The parties each filed briefs[3] and the Court is now prepared to rule.

## III. DISCUSSION

The Court first sets forth the proper legal framework for evaluating whether a statute provides an implied private right of action.

---

[1] For the facts underlying this dispute, please see the Court's Order of November 26, 2012. ECF No. 20 at 1-2. The Court here only relates the facts relevant to the private right of action issue.

[2] This action has been stayed pending the outcome of criminal proceedings against Diamond and its controlling members. *See $986,047.86,* at ECF No. 21.
[3] Defendants timely filed their brief on December 17, 2012. *See* ECF No. 22. Diamond, on the other hand, filed late. *See* ECF No. 25 (showing a filing date of January 7, 2013 for Diamond's brief, three days after the January 4 deadline the Court set in response to Diamond's motion for extension of time). Diamond never requested the Court's permission to file an out-of-time brief. Nor has Diamond shown good cause for its delay in filing. Such tardiness in filing is unacceptable and excuses like "technical difficulties" fly about as far as "the dog ate my homework." The Court nevertheless considers Diamond's brief for two reasons: 1) the present issue is one of first impression; and 2) no prejudice to Defendants or the Court resulted from Diamond's not-so-punctual filing.

The Court then outlines the relevant portions of § 983 and applies the framework to that statute.

## A. Private Rights of Action

"[W]hether a statute creates by implication a private right of action is a question of statutory construction . . . ." *Love v. Delta Air Lines*, 310 F.3d 1347, 1351 (11th Cir. 2002) (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979)) (internal quotations omitted). Indeed, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (remedies available are those "that Congress enacted into law")).

"The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right *but also a private remedy*." *Id.* (emphasis added). That inquiry "begins with the text and structure of the statute . . . and ends once it has become clear that Congress did not provide a cause of action." *Id.* at 288 n.7.

First, courts must "look to the statutory text for rights-creating language." *Love*, 310 F.3d at 1352 (citation and internal quotations omitted); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 n.3 (2002) ("Where a statute does not include . . . explicit 'right- or duty-creating language,' we rarely impute to Congress an intent to create a private right of action."); *Cannon*, 441 U.S. at 690 n.13 ("[T]he right- or duty-creating language of [a] statute has generally been the most accurate indicator of the propriety of implication of a cause of action."). Such language is, at a

minimum, that which "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff." *Love*, 310 F.3d at 1352 (quoting *Cannon*, 441 U.S. at 690 n.13). "Statutes that focus on the person regulated rather than the individuals protected," however, "create no implication of an intent to confer rights on a particular class of persons." *Id.* at 1353 (quoting *Sandoval*, 532 U.S. at 289 (internal quotations omitted)).

Courts must also examine "the statutory structure within which the provision in question is embedded." *Id.* "If that statutory structure provides a discernible enforcement mechanism," courts "ought not imply a private right of action because '[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Id.* (quoting *Sandoval*, 532 U.S. at 290).

Finally, "if—and *only* if—statutory text and structure" are inconclusive, courts look to legislative history and the legal context in which a statute was passed. *Id.* Such context, however, "matters only to the extent it clarifies text." *Sandoval*, 532 U.S. at 288. And the legislative history of statutes that do "'not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question'" of whether the statute provides a private right of action. *Love*, 310 F.3d at 1353 (quoting *Cannon*, 441 U.S. at 694). Ultimately, courts "examine legislative history with a skeptical eye." *Id.*

## B. 18 U.S.C. § 983 – General Rules For Civil Forfeiture Proceedings

Section 983 provides a comprehensive framework for civil forfeiture proceedings. Several provisions expressly grant parties access to courts at various stages of the

forfeiture process, for various reasons, with various forms of relief available. *See infra.* Section 983(a)(3) does not. Nor can this Court imply such access when the statute is measured "against the template laid out in *Sandoval.*" *Love*, 310 F.3d at 1354.

Section 983(a)(1) governs the notice the government must give to interested parties when it alleges property is subject to forfeiture. Persons entitled to such notice who do not receive it may move a court to "set aside a declaration of forfeiture with respect to that person's interest in the property." 18 U.S.C. § 983(e)(1).

Section 983(a)(2) governs the substantive content of, and procedure for filing, claims for seized property. Such claimants are entitled to the immediate release of seized property under certain conditions. *See id.* at (f)(1)(A)-(E). And claimants who believe they meet those conditions may file petitions in district court to have the property released if the appropriate official does not release the property within fifteen days of the claimant's request. *Id.* at (f)(2)-(3)(A).

Section 983(a)(3) operates quite a bit differently. It speaks not to interested persons, but to the government about what is required of it in response to claims. Once a "person claiming property seized in a nonjudicial civil forfeiture proceeding," *id.* at (a)(2)(A), files a claim, and "[n]ot later than 90 days after [that] claim has been filed, the Government shall file a complaint for forfeiture [in the appropriate district court] in the manner set forth in the . . . Rules . . . or return the property pending the filing of a complaint." *Id.* at (a)(3)(A). "If the Government does not . . . file a complaint for forfeiture or return the property, in

accordance with subparagraph (A) . . . the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General." *Id.* at (a)(3)(B).[4]

If the government does file a civil forfeiture complaint, however, "any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the . . . Rules." *Id.* at (a)(4)(A). A person filing a claim in response to a civil forfeiture complaint must file an answer no later than twenty days after filing the claim. *Id.* at (a)(4)(B). Claimants under § (a)(4) also are entitled to "petition the court to determine whether the forfeiture was constitutionally excessive." *Id.* at (g)(1).

### 1. Rights Creating Language (or the Lack Thereof) in § 983(a)(3)

Diamond argues that § 983(a)(3)'s language in fact focuses on the "class for whose especial benefit the statute was enacted." ECF No. 25 at 4; *Love*, 310 F.3d at 1352. But Diamond's argument speaks not to the language of (a)(3); rather, it relies on "reading the statute as a whole." ECF No. 25 at 4. This approach stands in juxtaposition to the statutory construction used in *Sandoval*, *Gonzaga*, and *Love* and the Court cannot abide it. Instead, the Court looks to (a)(3)'s language alone in determining whether that section contains rights creating language.

---

[4] 28 C.F.R. § 8.13 regulates the return of property under § 983(a)(3)(B). Diamond's argument that the "Attorney General has not created a procedure for the return of the property" appears to overlook this regulation. ECF No. 25 at 6, 9. In any case, like its statutory counterpart, § 8.13 speaks only to the government and offers no language indicating it creates an enforceable right for private parties.

The Court readily determines (a)(3) does not contain rights creating language. Section 983(a)(3) focuses exclusively on the person regulated—the government. The *government* is required to file a civil forfeiture complaint or return the property within ninety days of a party filing a claim in a non-judicial forfeiture action. *Id.* at (a)(3)(A). The *government's* complaint must adhere to the Rules. *Id.* The *government* must promptly release seized property if it fails to timely file a complaint. *Id.* at (a)(3)(B). And it is the *government*— not an interested person—who is prohibited from taking "any further action to effect the civil forfeiture of such property" if it fails to release the property or file a complaint within ninety days. *Id.* Such language neither "explicitly confer[s] a right directly on a class of persons," nor does it identify "the class for whose especial benefit the statute was enacted." *Love*, 310 F.3d at 1352.

Diamond is correct that Congress enacted § 983 in order to protect the due process rights of individuals whose property the government seizes. *See* ECF No. 25 at 4; H.R. REP. NO. 106-192, pt. 1, at 1 (1999). "The question," however, "is not simply who would benefit from [§ 983(a)(3)], but whether Congress intended to confer federal rights upon those beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294 (1981).

In *Gonzaga*, for example, the Supreme Court declined to find an enforceable right in the Family Educational Rights and Privacy Act ("FERPA")—which prohibits federal funding of educational institutions that release records to unauthorized persons—because FERPA spoke only to the person regulated, not the people whose records the law protected. 536 U.S. at 276; *see* 20 U.S.C. § 1232(g). As FERPA spoke, so too speaks §

983(a)(3). Section 983(a)(3) therefore contains no implication "of an intent to confer rights on a particular class of persons." *Love*, 310 F.3d 1353 (citing *Sandoval*, 532 U.S. at 289). Even so, the Court must still examine the statutory structure of § 983 to determine if that evidences congressional intent to provide a private right of action. *Id.*

### 2. *The Statutory Structure of § 983*

In addition to defining the burden of proof in forfeiture proceedings, delimiting the notice requirements, and providing for indigent representation, § 983 also contains mechanisms for persons interested in seized property to assert various rights in court.[5] Section 983(e)(1) provides any person entitled to notice in a non-judicial forfeiture proceeding who does not receive notice the ability to move a court to set aside the declaration of forfeiture. And claimants under § 983(a) may petition a district court for release of property if they first demand release from the appropriate official and no release is forthcoming within fifteen days of demand. *See* 18 U.S.C. § 983(f)(1)-(3). Most importantly, § 983(a)(4)(A) gives interested parties the ability to file claims and answers, in court, in response to a government civil forfeiture complaint. *Id.* at (a)(4)(A)-(b).

Although not a strict private right of action, (a)(4) does allow claimants to assert the precise argument—that a civil forfeiture complaint fails to satisfy the Rules— Diamond's complaint raises in this suit. That argument turns into a defense asserted in an answer, but the substance is the same. In

---

[5] Section 983 also defines and makes available an innocent owner defense, *see* 18 U.S.C. § 983(d); defines "civil forfeiture statute," *id.* at (i); and prescribes when civil fines are appropriate for the filing of frivolous claims. *Id.* at (h).

4

fact, Diamond utilized (a)(4) and filed a claim and answer in the civil forfeiture proceeding pending in this Court before Judge Moore. *See United States v. $986,047.86*, No. 4:12-cv-84, at ECF Nos. 14; 18 (S.D. Ga. Mar. 28, 2012). Diamond, moreover, raised the same defense there it asserts as its claim here. *Id.* at ECF No. 18.

"The explicit provision of" one enforcement mechanism "strongly undermines the suggestion that Congress also intended to create by implication a private right of action in a federal district court but declined to say so expressly." *Love*, 310 F.3d at 1357 (citing *Sandoval*, 532 U.S. at 290). And "[courts] ought not imply a private right of action" when the statute at issue expressly provides a different method to enforce a rule. *Id.* at 1353.

Section (a)(4) provides Diamond an avenue to assert the very claim it asserts in this case. And considerations of judicial economy and simple common sense strongly suggest that asserting the insufficiency of a complaint as a defense in the same action as the complaint itself makes more sense than bringing an entirely new action to raise that same defense as a new claim. Indeed, the existence of (a)(4), coupled with the lack of rights creating language in (a)(3), "precludes a finding of congressional intent to create a private right of action." *Id.* at 1358.

Diamond may be correct that Defendants' civil forfeiture complaint does not comply with the Rules and thus (a)(3)(A). Diamond's assertion of that argument in the civil forfeiture action before Judge Moore may ultimately prove fruitful. The problem is that § 983(a)(3)—even if Defendants' civil forfeiture complaint violates (a)(3)—is not the proper avenue to challenge the sufficiency of the civil forfeiture complaint.[6]

Congress made specific choices when it gave access to courts to those entitled to notice who never got it, *see* 18 U.S.C. § 983(e)(1); to claimants whose property is not released after they demand it, *see id.* at (f)(3); and to claimants in civil forfeiture actions. *See id.* at (a)(4). Congress also chose *not* to provide a free standing private right of action to claimants when a civil forfeiture complaint does not adhere to the Rules. *See id.* at (a)(3). And this Court simply cannot insert its own view of who should be able to sue in place of Congress's. *See Sandoval*, 532 U.S. at 286.

Because (1) the text of § 983(a)(3) lacks rights creating language; and (2) the statutory structure affords Diamond another enforcement mechanism to pursue its arguments, the Court need not turn to § 983's legislative history to determine no private

---

[6] Diamond argues that (a)(4) does not provide an alternative enforcement mechanism because Defendants' civil forfeiture complaint does not include specific mention of the cash amounts Diamond seeks returned. *See* ECF No. 25 at 7. This is the same argument Diamond makes to support its amended complaint, and its response to Defendants' motion to dismiss. *See* ECF Nos. 8 at 4-5; 14 at 6. Diamond argues that no mention of the specific dollar amounts it seeks returned creates a situation where, in effect, no civil forfeiture complaint covering the money at issue exists, and thus (a)(4) does not apply. *See* ECF No. 14 at 1. At bottom, however, that argument cuts at the sufficiency of Defendants' complaint, despite Diamond's protestations to the contrary. *See id.* ("This case is not about whether the government's civil forfeiture case adequately stated a claim . . . ."). Diamond itself expended substantial space arguing why the complaint fails to satisfy the Rules. *Id.* at 9. But even if the Court is incorrect in its characterization of Diamond's argument, that does not change the fact that Diamond's answer to Defendants' civil forfeiture complaint is the proper forum—and the forum provided by Congress in § 983(a)(4)—to pursue an argument that the civil forfeiture complaint does not apply to the amounts Diamond seeks returned.

right of action exists here. *See Love*, 310 F.3d at 1353 (stating that "if—and *only* if—statutory text and structure" do not resolve the private right of action issue do courts turn to legislative history).

## IV. CONCLUSION

18 U.S.C. § 983(a)(3) does not contain an implied right of action. The Court therefore **GRANTS** Defendants' motion to dismiss. Diamond's complaint is **DISMISSED**.

This 14 day of January 2013.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA